HICKEY, KAPLAN & WLTZEK v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   January 12, 1912.)

1. STREET RAILROADS (§ 117*)—OPERATION—INJURIES—ACTION—QUESTION FOR JURY—NEGLIGENCE.

Evidence in an action for damage caused by collision of plaintiff's horse and wagon with a street car *held* to make it a jury question whether defendant was negligent.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. § 117.*]

2. STREET RAILROADS (§ 117*)—OPERATION—INJURIES—ACTION—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

Evidence in an action for damage to plaintiff's horse and wagon by collision with a street car *held* to make it a jury question whether plaintiff was guilty of contributory negligence.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. § 117.*]

3. STREET RAILROADS (§ 99*)—OPERATION—INJURIES—CONTRIBUTORY NEGLIGENCE—LOOKOUT.

The driver of a wagon could assume that street cars would be operated with reasonable care, and, having looked for an approaching car before entering upon the tracks, could assume that he would be warned if a car subsequently approached him, and was not bound to continually look behind him.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 215; Dec. Dig. § 99.*]

4. STREET RAILROADS (§ 118*)—OPERATION—INJURIES—ACTION—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

There was evidence in an action for damage to a horse and wagon by collision with a street car that plaintiff's driver looked back for an approaching car upon driving upon the track, and, seeing no car, attempted to drive diagonally across the parallel tracks, and had proceeded at most only 75 feet, and nearly crossed the first one, when the collision occurred. A requested charge was refused that if the jury find that the driver drove 70 feet after looking, and did not look again until on the track, knowing the danger of the situation, and that cars passed frequently, without making any effort to ascertain whether a car was approaching behind him, thereby contributing to the accident, plaintiff could not recover. *Held,* that it was not reversible error to refuse the charge.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 269; Dec. Dig. § 118.*]

Appeal from Trial Term, Kings County.

Action by Hickey, Kaplan & Wltzek against the Brooklyn Heights Railroad Company.  From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals.  Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

D. A. Marsh, for appellant.

Ernest P. Seelman, for respondent.

WOODWARD, J.   The plaintiff brings this action to recover damages for the loss of a horse, wagon, and harness, due to the alleged negligence of the defendant in operating one of its cars on Third ave-

nue in the borough of Brooklyn on the 14th day of November, 1908. The case was submitted to the jury upon a charge fairly presenting the law, and from the judgment entered upon the verdict the defendant appeals to this court, as well as from the order denying defendant's motion for a new trial.

It appears from the evidence that the plaintiff's driver was driving along Third avenue just as darkness was settling down on the even-ing of November 14, 1908. It was raining and foggy, and plaintiff's horse was not getting a good footing on the asphalt pavement. The driver looked to the rear, as he testifies, and saw no car. He then pulled his horse about so as to drive diagonally across the defendant's tracks, intending to get upon the south-bound track, and to make use of the Medina sandstone pavement between the tracks for his horse's greater safety in traveling. Just how far plaintiff's driver proceeded after making his first observation does not clearly appear, but from the evidence the inference could be fairly drawn that he made rather an abrupt turn in the direction of the track and drove a considerable distance, 50 to 70 feet, diagonally with the track, and had nearly cleared the north-bound track on which the defendant's car was ap-proaching from the rear when the back wheel of his wagon was struck by the defendant's car, resulting in the demolishing of the wag-on, the injury of the harness, and the maiming of the horse so that it became necessary to kill him. The car appears to have been run-ing at a high rate of speed, and it did not stop until it had traveled nearly a block beyond the scene of the accident, though this may have been due to the injuries resulting to the controller of the car in the collision.

[1, 2] We think, under all of the facts testified to, a question was presented for the jury upon the negligence of the defendant, as well as to the contributory negligence of the plaintiff's driver. From the testimony of the plaintiff's witnesses the plaintiff's horse and wagon must have been within the direct line of vision of the defendant's mo-torman while the plaintiff was driving 50 to 75 feet, and the plaintiff's equipage had nearly cleared the track at the extreme distance when the collision occurred. There must have been a considerable length of time between the time that the plaintiff's wagon came into view of the motorman and the collision, time enough to have slackened the pace of the car at least, and yet there is not the slightest evidence of any action on the part of the defendant to avert the accident, ex-cept that it is in the evidence that the bell of the approaching car was sounded just at the instant before the contact.

[3] While it was the duty of plaintiff's driver to use reasonable care to give the defendant the right of way, he had a right to assume that the defendant would operate its cars with a reasonable degree of care, and having looked for an approaching car before entering upon the defendant's tracks, and no car being in sight, he had a right to expect that he would be given some warning of an approaching car after he had come within the view of the operator of such car. High-ways are for the use of the general public, and each user owes the duty of reasonable care. The plaintiff's driver was not bound to

watch behind him all of the time. He was obviously upon the track with a view to crossing. He had observed that the way was clear when he started, the way was slippery and he was trying to avoid that danger; and, if the defendant had used a reasonable degree of care, it is obvious that the accident need not have occurred. At least this view of the evidence was within the province of the jury, and we think its conclusions should not be disturbed.

[4] We do not find reversible error in the charge. The court refused to charge that:

"If the jury find that Schroeder, the driver, drove 70 feet after looking, and did not look again until he was in a point of danger or on the track, at this time and place, knowing the danger of the situation and being familiar with the conditions there existing, and that cars come frequently, without making any effort to ascertain whether the car was approaching behind him, and that contributed to the accident, the plaintiff cannot recover."

This language follows closely that which was refused, affording grounds for reversal, in Belford v. Brooklyn Heights R. R. Co., 86 App. Div. 388, 390, 83 N. Y. Supp. 836, but there the evidence showed that the driver had been upon the defendant's tracks for a distance of 800 feet or more, and that he had not only not looked at all, but that, so far as the evidence went, he had not listened or made use of any of his faculties to ascertain whether a car was approaching or not. Here there was affirmative evidence that the plaintiff's driver looked back to see if a car was approaching when he turned to cross the tracks, that he saw no car at the time; and that he then attempted to drive diagonally over the north-bound track to the south-bound track, and that he had nearly cleared the north-bound track when the collision came. This could not have taken many seconds, for the evidence in the extreme only fixes his forward movement at about 75 feet, during the most of which time he must have been in plain view of the approaching car. This is quite a different situation from that involved in the Belford Case, where the accident occurred late at night, and the plaintiff had entered upon the track and driven there for 800 feet without making any effort whatever to ascertain whether a car was approaching.

The judgment and order appealed from should be affirmed, with costs. All concur.