[Civ. No. 4979. Third Appellate District.—May 23, 1934.]

NEWELL FRANCIS WHITSETT, a Minor, etc., Appellant, v. MATHEW MORTON et al., Respondents.

[Civ. No. 4980. Third Appellate District.—May 23, 1934.]

THOMAS WHITSETT, Appellant, v. MATHEW MORTON et al., Respondents.

Jesse W. Carter and Glenn D. Newton for Appellants.

Chenoweth & Leininger and Morgan J. Doyle for Respondents.

PULLEN, P. J.—This is an appeal in the two cases entitled above and tried together, denying damages to Newell Francis Whitsett for personal injuries which he suffered as a result of an accident while riding as a guest in an automobile operated by the defendants, and denying plaintiff Thomas Whitsett damages for the loss of services of his son, resulting from such injuries.

The principal issue here presented is whether the finding that plaintiff Newell Francis Whitsett was guilty of contributory negligence is supported by the evidence. Where the sufficiency of the evidence to support a finding is

challenged, a court of review must accept as true all evidence and inferences logically drawn therefrom tending to establish the correctness of the finding. We need not therefore point out the evidence which might tend to support a contrary finding but concern ourselves only with that testimony which, if given credence by the trial court, would lead by logical steps to the finding as made by the trial court. This testimony may have been disputed or contradicted, but that is not important at this stage of the proceeding.

The questioned finding is to the effect that plaintiff Newell Francis Whitsett was guilty of carelessness and negligence in the manner in which he conducted himself at the time and place of the accident and at all times prior thereto on said automobile trip; that before becoming an occupant of said automobile he knew that said defendants Marion Morton and Herbert R. Wise had been drinking intoxicating liquor and that plaintiff was voluntarily drinking intoxicating liquor with Marion Morton and Herbert R. Wise. After becoming an occupant of said automobile he likewise knew that said defendants continued to drink intoxicating liquor and that he continued to drink intoxicating liquor with them; that at the time and place of the accident and prior thereto, plaintiff knew that Herbert R. Wise was intoxicated and that prior to the time Herbert R. Wise commenced to drive and operate said automobile the plaintiff knew that defendant Wise was intoxicated and knew that the operation of an automobile by an intoxicated person was liable to result in an accident, but knowing all of the aforesaid facts, plaintiff carelessly, negligently and voluntarily entered the automobile and thereafter rode and continued to ride in said automobile notwithstanding that plaintiff had opportunities to alight from and remain out of said automobile he failed, neglected and declined so to do.

The finding further recites that after becoming an occupant of the automobile and with knowledge that defendant Wise was intoxicated as aforesaid, plaintiff carelessly, negligently and voluntarily in disregard of his own safety, went to sleep, and at the time of the accident was and prior thereto had been asleep, and by reason of his being asleep at the time of the accident, plaintiff was unable to protect himself against injury to any extent whatsoever and thereby rendered himself unable to observe the approaching danger

or warn the defendant Wise thereof, and that by reason of such carelessness and negligence on his part plaintiff Newell Francis Whitsett proximately contributed to the damages and injuries of which he complains, which carelessness and negligence amounted to and constituted contributory negligence on his part.

In support of this finding the testimony reveals that Newell Francis Whitsett, one of the appellants herein, was at the time in question, about sixteen years of age and resided with his parents in the town of Montague, county of Siskiyou. He was a student at the Yreka High School, being transported from his home to the high school at Yreka by Herbert Wise, one of the defendants, with whom Thomas Whitsett, the father of Newell Francis Whitsett, had made arrangements for that purpose. After school on that day Newell had attended a baseball game, where he had one drink of whisky which was given to him by Wise. About 5:30 o'clock P. M. Newell and Wise left the baseball game and Wise took him to the Wise ranch, a few miles from Yreka, arriving at about 7 o'clock P. M. There they met Marion Morton, a young man of about eighteen years of age, one of the respondents herein, and Whitsett was invited by either Wise or Morton to enter the car of Morton, which he did, and the three boys then returned to Yreka. After spending some time in Yreka it was suggested by Wise that they drive to Grenada, a distance of twelve miles from Yreka. On the way to Grenada Wise produced a pint bottle of whisky which he had purchased at Yreka, from which bottle each occupant of the car drank. At Grenada they stopped at a restaurant where Whitsett and Morton had their supper. There they bought some ginger ale which was mixed with the whisky, and other drinks were had. All together, the three, Wise, Morton and Newell Whitsett, drank about two-thirds of the pint bottle of whisky. The remainder was drunk by others at Grenada. After leaving the restaurant Wise suggested they go to Weed. About that time Morton said he was tired and Wise thereupon took the wheel and thereafter drove the car with Morton's permission. About a mile south of Grenada Wise stopped at a ranch and purchased one quart of wine. They stopped twice on the road to Weed and all drank from the jar. At Weed they drove around the town and

Wise then suggested they go to Mt. Shasta City. It was prior to reaching Mt. Shasta City that Newell Whitsett first observed that Wise was intoxicated. In answer to the question, "And could you tell whether or not he (Wise) was intoxicated? A. Well, I thought he was. Q. You believed at that time (at Weed) that Herbert Wise was somewhat intoxicated? A. Yes. Q. You also believed at that time that Marion Morton was somewhat intoxicated? A. Yes. Q. Both Wise and Morton showed signs of intoxication at Grenada, did they not? A. Well, I think they were. I don't remember much about Marion Morton but I think Herb was." "Q. Now, while you were there in the restaurant you observed that Herbert Wise in particular was showing signs of intoxication? A. I observed what I thought was. Q. Well, it was your belief there in the restaurant that Herbert Wise was somewhat intoxicated? A. Yes. Q. And you thought that Marion Morton there at the restaurant in Grenada was somewhat intoxicated, did you not? A. Yes. . . . Q. Did you at any time object to riding in the automobile with Herbert Wise and Marion Morton? A. No, I don't think I did."

At Mt. Shasta City Wise suggested they go to Dunsmuir. Whitsett was awake at Weed, but after leaving Mt. Shasta City went to sleep, and remained asleep during the remainder of the trip. They arrived at Dunsmuir about midnight. From Dunsmuir the party proceeded toward Redding. South of Dunsmuir Morton also went to sleep and did not wake up until after the accident. The three boys were riding in one seat of a Ford roadster with Whitsett in the middle, and both Morton and Whitsett were asleep when the car collided with a cement abutment of a bridge, badly damaging the car and inflicting the injuries complained of to Newell Francis Whitsett.

Further testimony which supported the finding is given by Mattie Whitsett, mother of Newell Francis Whitsett, as follows: "Q. Mrs. Whitsett, after the accident referred to in this case, did you have a conversation with Herbert Wise? A. Well, I didn't talk direct to him myself but I stood and heard him talking to Newell. That was just a day or two after he (Newell) became conscious. . . . Q. And state what you heard Wise say at that time? A. He asked

Newell if he saw the piece in the paper about the accident . . . and he said that he didn't know whether there was any fog or not, . . . said the bunch of them was so drunk they couldn't have seen the fog if there was one." This witness also testified further: "Q. Did he (Wise) say at any time whether or not he was asleep at the time of the accident? A. He didn't say anything about being asleep but he did make the remark that he acted the fool when he gave Newell the liquor in Yreka." The deposition of Newell Whitsett had been taken previous to the trial, and upon his cross-examination he was asked concerning the same. Question by Mr. Chenoweth: "Q. I will ask you, Newell, if these questions were not asked you by me and you did not give these answers at the time of the taking of your deposition on September 26, 1931? 'Q. Did the liquor that you had either on the way from Yreka to Grenada or at Grenada affect you? A. Yes. Q. Made you a little intoxicated? A. Yes. Q. Was Wise a little intoxicated? A. Yes. Q. And Morton too? A. Yes. Q. You could tell that? A. Yes. Q. You could tell from the way they acted? A. Yes. Q. And the way they talked? A. Yes.' Q. You gave the testimony? Those questions were asked you and you gave those answers, did you not? A. Yes." And reading further from the same deposition the following questions and answers were given:

" 'Q. Wise and Morton were both somewhat intoxicated at Grenada, weren't they? A. Yes, I think they were. I am not sure. Q. You could tell from the way they acted? A. No, I am not sure whether they were or not but I think so. Q. But after they drank this wine on their way to Weed they were intoxicated, weren't they? A. Yes, I think they were. Q. Well, when you say you think so, you know they were don't you? A. Yes.' Q. Those questions were asked you and those answers given by you at the time of the taking of your deposition? A. Yes."

Herbert R. Wise did not appear as a witness at the trial, he having defaulted. We believe, however, that sufficient has been quoted to show that the trial court was justified in the finding that Wise was intoxicated at the time of the accident which occurred about 4 o'clock on the morning of March 28, 1931.

Appellant contends that there is no evidence to show that the drinking of intoxicating liquor by Wise impaired his ability to operate the car in a prudent or cautious manner.

It is true that both of the companions of Wise were asleep and had been for some time prior to the accident and they could not enlighten the court as to any of the events at the time of or for some time prior thereto. The testimony was that they had all been drinking of wine and whisky to the extent that Whitsett declared they were all intoxicated, a few hours prior thereto, and therefore the testimony that neither Whitsett nor Morton observed anything in their journey in the driving of Wise that gave them any concern as to their safety is of little value, for the driver might have been reckless, which to his passengers, in their condition, would have been but mildly exhilarating. An intoxicated driver might not drive erratically nor at an unlawful speed and still be intoxicated and fail to act in a crisis as should a sober normal person. It is also true that Wise, the only one who might shed any light upon the accident, after being served with summons and complaint in the action, failed to appear at the trial, but we have his version of the collision from the testimony of Mrs. Whitsett to the fact that he was too drunk to see the bridge.

From the physical facts it appears also that the party left Dunsmuir about midnight and the accident occurred about 4 o'clock A. M., fifty miles south thereof. Just what Wise was doing all of that time is not known. It may be recalled, however, that part of the jar of wine was left in the car after leaving Grenada. There is no testimony of the investigating officers that any was found at the scene of the accident the following morning.

An examination of the tracks of the car show that for some distance, the measurement thereof not being given, the car had been traveling on the dirt shoulder on the west or right-hand side of the highway and when it reached a point 130 feet north of the bridge the car bore to the left and came in contact with the northeast abutment of the bridge with sufficient force to completely wreck the car.

It has been held that the doctrine of *res ipsa loquitur* applies in a case when it is shown that an automobile is wrecked on an open highway for no apparent reason, and

raises an inference of negligence. (*Crooks* v. *White,* 107 Cal. App. 304 [290 Pac. 497]; *Ireland* v. *Marsden,* 108 Cal. App. 633 [291 Pac. 912].) It, too, is some indication of lack of sober judgment to start at midnight on a sixty-five mile journey merely to call upon some other boys in a town in a direction opposite from the homes of Wise and his companions.

We think enough has been suggested from which the court could reasonably conclude that Wise was intoxicated and not driving with the necessary care and caution required of him.

Appellant also contends that the evidence fails to take into consideration another essential element of the rule which imputes negligence to a guest for riding with an intoxicated driver, namely, that Whitsett knew of the driver's condition, and knowing that fact, he thereafter continued to ride with him. The record discloses, however, that first at Grenada and later at Weed, Newell Whitsett knew that both Wise and his companion Morton were intoxicated, yet nevertheless he continued to ride in the car with Wise driving.

Appellant further claims that it is not shown that Whitsett had a chance to leave the automobile at a safe place after learning of the intoxication of his companions, but ample opportunity was afforded him both at Grenada and Weed when he could have left the car.

In the case of *Jones* v. *Pacific Gas & Electric Co.,* 104 Cal. App. 47 [285 Pac. 709], plaintiff became a guest of one whom she knew at the time to be intoxicated. The car under the control of the intoxicated host collided with a pole of the Pacific Gas and Electric Company. In an action by plaintiff against the company the question of the contributory negligence of plaintiff was presented and the court in its opinion refusing relief to plaintiff cited and analyzed many of the leading authorities from this and other jurisdictions.

The last portion of the questioned finding is that appellant Newell Whitsett in disregard of his own safety, went to sleep, and by reason thereof was unable to protect himself against injury and rendered himself unable to observe the approaching danger or to warn the defendant Wise thereof. The law requires of a guest that he exercise

ordinary care as to his own safety. It is not the rule that a guest who goes to sleep when riding with a careful and competent driver is guilty of contributory negligence. In the case of *Malone* v. *Clemow*, 111 Cal. App. 13 [295 Pac. 70], that contention was made, and the court there held:

"The fact that one or more of the guests was asleep at the time of the collision does not constitute negligence as a matter of law, for, as we have already seen, there was no obligation on the part of the guests to exercise an oversight as to the way in which the automobile was to be operated, or keep a lookout for impending danger."

But the court, continuing, clearly indicates that such rule is not applicable where one is put on notice of the recklessness or incompetency of the driver. "Furthermore," the opinion continues, "the evidence shows, that Mrs. Clemow was an experienced driver and the guests had no reason to complain of her driving. Mrs. Clemow testified herself that at the time of the accident she was not tired, but was in fact refreshed by the cold air of the bay."

In a case from Massachusetts of *Oppenheim* v. *Barkin*, 262 Mass. 281 [159 N. E. 628, 61 A. L. R. 1228], the plaintiff while riding with defendant in an automobile as his guest was injured when the automobile in which he was riding at 4 o'clock A. M. turned from the right side of the road to the left and ran into a post. The court there said:

"A guest on the rear seat of an automobile cannot be expected to control its operation or interfere with its movement, but he must exercise some care. If the plaintiff saw that the defendant was asleep, or, if he were awake and the plaintiff saw him turning away from the line of travel across the highway to the left, it could have been found to be the plaintiff's duty to arouse the defendant or warn him of the approaching danger; or for the plaintiff to take some precaution for his own safety."

In *Lambert* v. *Eastern Massachusetts R. Co.*, 240 Mass. 495 [134 N. E. 340, 22 A. L. R. 1291], the judge instructed the jury, in effect, that a guest in an automobile cannot completely surrender himself to the care of the driver and then successfully contend he was in the exercise of proper care; that it was the plaintiff's duty to exercise such caution as a reasonably prudent person would use. It was there

held that such instruction was a correct statement of the law of that jurisdiction.

In the instant case the guest went to sleep while riding with an intoxicated and therefore incompetent driver. If it is contributory negligence to ride with an intoxicated driver it must also be deemed contributory negligence for a guest to go to sleep while riding with such a driver. He had no right to trust himself entirely to the driver in such a known condition, rendering himself, by sleep, unable to use any precaution or care whatsoever for his own safety.

We believe the record justifies the finding of the trial court that plaintiff Newell Francis Whitsett was guilty of negligence which proximately contributed to his injury, and the judgments of the trial court to that effect are hereby affirmed.

Thompson, J., and Plummer, J., concurred.